SHAW, Banking Commissioner, v. HOLDER-MAN. (No. 767.)

Court of Civil Appeals of Texas. Waco. April 25, 1929.

Rehearing Denied May 23, 1929.

See, also, 17 S.W.(2d) 193.

Jno. W. Goodwin, of Austin, and Frazier & Averitte, of Hillsboro, for appellant.

Bryan & Maxwell and J. W. Cocke, all of Waco, for appellee.

BARCUS, J. This suit was instituted by appellant, as commissioner of banking, to recover from appellee a stockholder's assessment of $4,500 which had been levied against him as a stockholder of the First State Bank of Mt. Calm. The cause was tried to the court and resulted in a judgment being rendered denying appellant any recovery.

The following facts are clearly deducible from the record. It appears the First State Bank of Mt. Calm was incorporated for $40,-000. In November, 1925, its affairs became such that the directors thought wise to place it in the hands of the banking commissioner for liquidation. At that time said bank had approximately $75,000 on deposit, and in addition owed about $45,000; same being payable principally to the Federal Reserve Bank at Dallas and the First National Bank of Waco, Tex. It had assets, outside of stockholders' liability of $166,107. Most of the stockholders, together with a representative of the Federal Reserve Bank and the First National Bank of Waco, met with the representative of the commissioner of banking, and, as a result of the conference, it was determined to organize a new bank, to be known as the Farmers' & Merchants' Bank of Mt. Calm, with a capital stock of $25,000, and the new bank was to assume and pay all the outstanding liabilities of the old First State Bank. It was agreed between all the parties that the banking commissioner would levy an assessment against the stockholders of the old First State Bank, and that said stockholders' assessment should be, and same was, with the other assets of said bank, transferred to the Farmers' & Merchants' Bank. It was further understood and agreed between all the parties that the stockholders of the First State Bank who took stock in the new Farmers' & Merchants' Bank would be relieved of and would not be required to pay the stock assessment on the old First State Bank. It appears that it was the judgment of all the parties, including the banking commissioner, that it would not be necessary to collect the $40,000 assessment from the stockholders of the old bank in order to pay its debts, but that said assessment was levied by the banking commissioner in order that the directors of the new bank might use same as a threat to force the stockholders of the old First State Bank to take stock in the new

bank or pay said assessment. In said conference it was specifically agreed between all of the parties, including the representative of the banking commissioner and the creditors of the First State Bank, that, if the new bank was organized and the stockholders in the old bank subscribed for stock in the new, none of those who subscribed for stock in the new bank would be called on or required to pay any of the assessment levied on them as stockholders, in the old bank. With that agreement and understanding between all the parties at interest, the representative of the banking commissioner, together with the representatives of the creditors of the First State Bank and the directors and stockholders of both the First State Bank and the proposed new bank, went in a body to the judge of the district court of Hill county with a petition, asking that the banking commissioner be authorized to sell all of the assets of the First State Bank, including the stockholders' assessment, to the Farmers' & Merchants' Bank, and said order was so made by said judge. The First State Bank kept its doors open until the closing hour on November 18, 1925, and the new bank began its operations at about the regular banking hour on the morning of the 19th, using the books of the old bank, and no hiatus of any sort occurred in the conduct of the bank by reason of the sale of the assets of the First State' Bank to and the organization of the new Farmers' & Merchants' Bank. The representative of the banking commissioner himself handled the matter of obtaining the new charter. The stockholders of the First State Bank and the other parties who were in conference with the banking commissioner subscribed, and paid for all the $25,000 stock in the new bank, except $1,900 thereof, which they figured would be taken, and which was, without controversy, subscribed and paid for by the stockholders of the First State Bank who were not present in said conference. Appellee was present and took part in all of said negotiations. Appellee, relying upon the agreement that he would not be called on or required to pay the assessment levied against him as a stockholder of the First State Bank, subscribed and paid for $3,500 stock in the new bank, and he would not have done so but for said agreement. The Farmers' & Merchants' Bank paid or made satisfactory renewals of all of the debts of the First State Bank, and after its organization ratified and recognized the agreement and understanding as made between all the parties at interest that those who owned stock in the First State Bank and who subscribed for stock in the new bank were released from any and all liability growing out of the assessment levied on the stock of the old First State Bank, and no effort was made by the Farmers' & Merchants' Bank to collect any of said stock assessments from those who took stock in said new bank.

After the Farmers' & Merchants' Bank had been in existence for one year it became embarrassed financially, and same was placed in the hands of the banking commissioner for liquidation. An assessment was levied against the stockholders of said Farmers' & Merchants' Bank, including appellee, for 100 cents on the dollar, and same was paid.

This suit was instituted by the commissioner of banking after he took charge of the Farmers' & Merchants' Bank, against appellee to enforce said stock assessment levied against him as a stockholder of the old First State Bank. Appellee claimed that said assessment was canceled and released and was unenforceable by reason of the facts and agreements above set forth. He pleaded further by way of offset that the Farmers' & Merchants' Bank at the time it closed its doors owed him $3,712 for money which he had on deposit, and that, if he was liable at all, said deposit should be charged as an offset against the money claimed by said bank on the old assessment against the First State Bank.

So far as we have been able to find, this is a case of first impression under facts anything like similar to the ones involved herein. The stockholders in the old bank, for the purpose of paying its debts and to save a bank for their community, and relying upon the promises and agreements on the part of all parties at interest, including the banking commissioner and the creditors of the old bank, and with the agreement on the part of the stockholders and directors of the old bank and the new bank. agreed to and did subscribe and pay for stock in the new bank, with the understanding that the assessment against the old bank would not be enforced. This seems to have been the scheme and plan originated and suggested by the banking commissioner. Under Article 455 of the Revised Statutes, the commissioner of banking may, if necessary to pay debts of a defunct bank, enforce the individual liability of the stockholders, and, under the decisions of the courts, the commissioner is the only person who can maintain a suit against a stockholder for the stockholder's assessment. In this case it appears that all of the debts of the First State Bank have been paid and none of its creditors are in any way complaining, and all of its creditors joined in and were parties to the original agreement that the assessment against the old stockholders would not be enforced or demanded. There is neither pleading nor proof that it was or is necessary for the payment of the debts of the First State Bank that the stock assessment be levied or collected. If the First State Bank was still in existence, or if the debts had not been paid, or if it was being liquidated by the banking commissioner, we recognize the rule as laid down by our courts that the banking commissioner has the power to enforce the collection of an assessment against a stockholder of a defunct bank whether it is needed to pay the debts or not, the courts holding in that connection that, if more than is required to pay the debts is collected from the stockholders, same shall be returned to those paying same. Under the facts in this case, however, the First State Bank has been entirely liquidated by the commissioner of banking and all its assets have been sold, all its debts have been paid, and same has ceased to have any legal existence. The assessment levied against its stockholders became simply a chose in action, the same as any other note or obligation of the old bank in the hands of the Farmers' & Merchants' Bank, and its directors had absolute power and control thereof. At the time the Farmers' & Merchants' Bank purchased the assessment against the stockholders of the First State Bank, it, as well as all the stockholders and creditors and the commissioner of banking, who sold said assessments, knew that said assessment was not levied for the purpose or with any intention of its being collected either by the officers of the new bank or by the banking commissioner from any stockholder in said bank who took stock in the new bank, and all parties knew that said assessment was not levied by the commissioner of banking for the purpose of paying the debts of the First State Bank, but was levied that it might be used to force said stockholders to take some stock in the new bank. It cannot be said that the Farmers' & Merchants' Bank was an innocent purchaser for value of said assessments. Neither could it be said that the banking commissioner, as the liquidating agent of the Farmers' & Merchants' Bank, was an innocent purchaser of said assessments against the old First State Bank for value. We see no reason why the agreement as made and carried out between all the parties at interest in this case should not now be binding and enforceable. It does not appear either from the pleadings or proof that any creditor of the First State Bank suffered loss, or will suffer or lose anything by reason of the assessments against the stockholders not having been paid. We do not believe the banking commissioner, as the liquidating agent of the Farmers' & Merchants' Bank, is in any position to enforce or collect the assessment against the stockholders of the First State Bank because of the terms and conditions under which the same was levied. Especially is this true in so far as it affects appellee, he having acted on the strength of and relying implicitly on said agreements. If it could be said that the contract was wrong, the banking commissioner is not in a position to take advantage thereof because it was his plan and he as well as the Farmers' & Merchants' Bank knew of the conditions of said agreement and the conditions under which the assessment was made. We do not believe

that the state, acting through its executive officers, should be permitted to violate a solemn contract any more than its private citizens. We think the contract, since it has been carried out and acted upon by the parties, is absolutely binding upon the banking commissioner, as liquidating agent of the Farmers' & Merchants' Bank, and that same should be enforced.

If it could be said that appellee was liable for any amount, clearly he should be entitled to offset same with the deposit owed him by the Farmers' & Merchants' Bank at the time the commissioner of banking took charge thereof. It is a well-settled principle of law that a stockholder's liability in a bank cannot be offset with his individual deposit, but this is not a suit by the commissioner or by the Farmers' & Merchants' Bank against a stockholder for an assessment against stock owned by him in said bank, but is a suit against appellee as a stockholder in another and different bank. Said assessment, when purchased by the Farmers' & Merchants' Bank, became nothing more or less than a chose in action, and same was subject to all the defenses and offsets in its hands as could be pleaded against the bank on any ordinary claim which it sought to enforce.

We have carefully examined appellant's assignments of error, and same are overruled. The judgment of the trial court is affirmed.